UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
NELSON CARRASQUILLO, :
: CASE NO. 1:10-CV-00219
Plaintiff, :
:
v. : OPINION & ORDER
: [Resolving Doc. Nos. 44, 46]
CITY OF CLEVELAND, *et al.*, :
:
Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this civil rights action, Plaintiff Nelson Carrasquillo sues the City of Cleveland, Cleveland Police Department Detectives Clifford Kime and Virginia Rodriguez, and several unidentified officers, under 42 U.S.C. § 1983 and Ohio state law, for false arrest and false imprisonment. [Doc. 1.] Carrasquillo and the Defendants each move for summary judgment on these claims. [Doc. 44; Doc. 46.] For the following reasons, the Court **GRANTS** the Defendants' motion for summary judgment and **DENIES** Plaintiff Carrasquillo's motion for summary judgment.

**I. Background**

The facts of this case are largely undisputed. Plaintiff Carrasquillo's claims stem from his February 2, 2009 arrest and six-hour detention on burglary and grand theft charges, [Doc. 47-1 at 7-8, 11.] On October 8, 2008, Cecilia Zacarius reported a burglary of her home on West 65th Street in Cleveland, Ohio. [Doc. 47-5 at 3.] An initial investigation of the crime scene recovered

Case No. 1:10-CV-00219
Gwin, J.

fingerprints from the perpetrator, and Cleveland Police Department records matched those prints to a "Nelson Carrasquillo," a person entered into the system and assigned Cleveland Police Department identification number 382843 from a prior arrest. [Doc. 44 at 9; Doc. 45-2 at 11; Doc. 46 at 4.]

The Cleveland Police Department assigned Defendant Detective Virginia Rodriguez to further investigate the burglary. Detective Rodriguez first ran an electronic check for the name "Nelson Carrasquillo" in the Cleveland Police Department's Records Management System. The search results presented a single match, to the Plaintiff. The records system also showed that the person identified as Nelson Carrasquillo was forty-three years old and listed his height, weight, hair color, and eye color. Rodriguez obtained the Plaintiff's address, criminal history, and a photo by running searches in other electronic police records databases. [Doc. 47-4 at 7-9.] When Detective Rodriguez then showed the photo of Plaintiff Carrasquillo to Cecilia Zacarius, the burglary and theft victim, Zacarius identified the Plaintiff as her neighbor. Zacarius also told the police that she had never given the Plaintiff any permission to enter her house. [Doc. 47-4 at 10.]

Because juvenile records are not displayed in the police Records Management System, however, Detective Rodriguez's electronic records search for Nelson Carrasquillo did not reveal a second match to Nelson Carrasquillo, Jr., the Plaintiff's estranged seventeen-year-old son. [Doc. 47-1 at 4; Doc. 45-2 at 12.] And, because the Records Management System matches records to a suspect's name, not to his unique Cleveland Police Department identification number, the system did not reveal that Cleveland Police Department identification number 382843—the number matching the fingerprints recovered from the crime scene—actually belonged to Nelson Carrasquillo, Jr., not the Plaintiff. [Doc. 47-4 at 7-9.] As a result, Detective Rodriguez assumed that the Records Management System had identified the fingerprint match to the Plaintiff and not to the Plaintiff's

-2-

Case No. 1:10-CV-00219
Gwin, J.

son. Rodriguez was not aware at that time that she could have verified the suspect's identity against his identification number by using a manual filing system in the police department's forensic unit. [*Id.*]

Based on the results of her investigation, Detective Rodriguez sought warrants for the Plaintiff's arrest. On November 30, 2008, an Assistant City Prosecutor sought two arrest warrants naming the Plaintiff. The Cleveland Municipal Court Deputy Clerk found probable cause to bring charges against the Plaintiff for burglary and grand theft, and issued the warrant the same day. Plaintiff Carrasquillo says that after registering the warrants, Detective Rodriguez left her business card at Carrasquillo's home. [Doc. 47-4 at 11-12.] She did not investigate the burglary further.

About two months later, on February 2, 2009, Detective Kime executed the arrest warrants and caused Carrasquillo to be arrested at his workplace. As Detective Kime transported the Plaintiff to the Justice Center in Cleveland for booking, however, the Plaintiff's daughter called Detective Rodriguez to say that the police should have arrested Nelson Carrasquillo, Jr., instead of Plaintiff Nelson Carrasquillo, Sr. [Doc. 47-3 at 5-6; Doc. 47-4 at 14-15.] Detective Rodriguez verified that the warrants had indeed named the wrong person and then obtained permission from an Assistant Prosecutor to withdraw the warrants. [Doc. 47-4 at 15; Doc. 47-5 at 52.] Six hours after his arrest, the Plaintiff was released from jail. His son, Nelson Carrasquillo, Jr., was subsequently convicted of the burglary and grand theft. [Doc. 47-4 at 16.]

On February 1, 2010, Carrasquillo filed this lawsuit. He alleges: (1) false arrest and false imprisonment, and violation of his Fourth Amendment Rights under 42 U.S.C. § 1983, against Detectives Kime and Rodriguez in their individual capacities; (2) wrongful arrest and wrongful imprisonment, under Ohio state law, against Detectives Kime and Rodriguez; and (3) failure to train,

-3-

Case No. 1:10-CV-00219
Gwin, J.

under § 1983, against the City of Cleveland and the Detectives in their official capacities. [Doc. 1.] Both parties now move for summary judgment.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a grant of summary judgment is proper if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden to show the absence of a genuine dispute of material fact. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden is met by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, the Court "considers the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party." Lenscrafters, Inc. v. Robinson, 403 F.3d 798, 802 (6th Cir. 2005) (citations omitted).

## III. Analysis

### A. Fourth Amendment Claims

Plaintiff Carrasquillo first brings claims against Detectives Rodriguez and Kime in their individual capacities under § 1983 for seizure without probable cause in violation of his Fourth Amendment rights. 42 U.S.C. § 1983. Carrasquillo argues that Detective Rodriguez obtained, and Detective Kime executed, warrants for Carrasquillo's arrest that were unsupported by probable

Case No. 1:10-CV-00219
Gwin, J.

cause. [Doc. 44.] Responding, the Defendant detectives say they are entitled to qualified immunity on these claims both because the warrants were supported by probable cause and because the detectives acted in an objectively reasonable manner when obtaining and executing those warrants. [Doc. 46; Doc. 48.]

The doctrine of qualified immunity generally shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks and citation omitted). In determining whether a defendant is entitled to qualified immunity, the Court considers: (1) while viewing the facts in the light most favorable to the plaintiff, a violation of a constitutional right occurred; and (2) the constitutional right at issue was clearly established at the time of the defendant's conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by* *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that courts have discretion to decide which of the two inquiries should be addressed first). The Court must also consider "whether the official's action was objectively unreasonable under the circumstances." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008).

Carrasquillo's false arrest and false imprisonment claims allege a violation of his constitutional right to be free from arrest without probable cause. *See Baker v. McCollan*, 443 U.S. 137, 142-43 (1979). "An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983."

-5-

Case No. 1:10-CV-00219
Gwin, J.

*Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). But an officer may still be held liable under § 1983 for such claims, even in light of a facially valid warrant, "when evidence exists that [the officer] intentionally [misled] or intentionally omitted information at a probable cause hearing for an arrest . . . warrant provided that the misleading or omitted information is critical to the finding of probable cause." *Id.* at 677 n. 4; *see also Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003) ("An investigator may be held liable under § 1983 for making material false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest." (citing *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999)).[1]

Though Carrasquillo says the warrants for his arrest were facially invalid because they were not supported by probable cause, this argument is not persuasive. Detective Rodriguez sought warrants for the Plaintiff's arrest based, in part, on the electronic records matching fingerprints from the crime scene to the Plaintiff's name and records, and on the victim's statement to Rodriguez that the Plaintiff lived next door but did not have permission to enter her home. *See Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002) (finding probable cause based on "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person . . . in believing . . . that the suspect has committed . . . an offense." (citation omitted)). Relying on Detective Rodriguez's affidavits and statements as to the basis for her complaint against the Plaintiff, the Cleveland Municipal Court Deputy Clerk found probable cause to believe the Plaintiff had committed burglary and grand theft. [Doc. 46-1.] *See Sykes v. Anderson*, 625 F.3d 294, 306 (6th Cir. 2010) ("'Probable

---

[1] An officer makes an assertion with reckless disregard if, in light of all the evidence, she "entertained serious doubts as to the truth of [her] statements or had obvious reasons to doubt the accuracy of the information [she] reported." *Peet v. City of Detroit*, 502 F.3d 557, 570 n.3 (6th Cir. 2007) (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)). Similarly, an officer makes an omission with reckless disregard if she "withholds 'a fact in [her] ken' that 'any reasonable person would have known . . . is the kind of thing the judge would with to know.'" *Id.* (quoting *Wilson*, 212 F.3d at 788).

Case No. 1:10-CV-00219
Gwin, J.

cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" (quoting *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005))); *cf. Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 564-65 (1971) (complaint consisting of nothing more than complainant's conclusion that defendants perpetrated the offense is insufficient to support valid warrant); *City of Dayton v. Perkins*, App. Nos. 7688, 7849, 1983 WL 4806, at *4 (Ohio Ct. App. Feb. 9, 1983) (complaining officer's source of knowledge must be apparent on face of the complaint). Carrasquillo does not challenge the validity of this warrant application or approval process. And, that Detective Rodriguez did not further investigate or verify the suspect's identity does not invalidate the warrants. "Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers*, 188 F.3d at 371 (citations omitted); *see also Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988).

Against this backdrop, Carrasquillo makes no showing that the resulting warrants were facially invalid, and the face of the warrants or supporting probable cause determinations bore no indicia of unreliability. Despite this Court's doubts as to whether careful consideration is given probable cause determinations when a municipal court clerk or deputy clerk—in lieu of a judge or magistrate—registers a felony arrest warrant, Ohio law expressly permits a clerk of court to issue felony warrants, trusting they will not merely rubber-stamp a police officer and prosecutor's probable cause findings. *See United States v. Master*, 614 F.3d 236, 241 (6th Cir. 2010) (states may determine who can approve warrants and what type of warrants that person is authorized to issue); *State v. Fairbanks*, 289 N.E.2d 352, 356-57 (Ohio 1972) (allowing clerk of courts to issue felony arrest warrant (citing *Shadwick v. City of Tampa*, 407 U.S. 345 (1972))); Ohio Rev. C. § 2935.10(A); Ohio

Case No. 1:10-CV-00219
Gwin, J.

R. Crim. P. 4(a)(1) (a judge, magistrate, clerk of court, or officer of the court designated by the judge shall issue a warrant if he finds, from the complaint or affidavits filed with the complaint, probable cause to believe the defendant has committed the offense).

Nor does Carrasquillo present any evidence or argument that Detective Rodriguez intentionally, or with reckless disregard for the truth, made any material omissions or misrepresentations about the results of her investigation when obtaining the arrest warrants. Carrasquillo instead emphasizes that in securing the warrants, Detective Rodriguez did not know or did not think to avail herself of all the information and investigative avenues available to her. [Doc. 44 at 22.] "At best, however, the investigation's lack of thoroughness might support an inference of negligence, but it does not demonstrate knowing or intentional behavior designed to violate [Carrasquillo's] constitutional rights." *Ahlers*, 188 F.3d at 373-74. Thus, though it may be argued that Detective Rodriguez was negligent in failing to determine that the arrest warrants named the wrong "Nelson Carrasquillo," "[p]roof of negligence or innocent mistake is insufficient" to maintain a false arrest or false imprisonment claim under § 1983. *Id.* at 373 (quoting *Lippay*, 996 F.2d at 1501).

For much the same reason that Carrasquillo's constitutional false arrest and false imprisonment claims fail as against Detective Rodriguez, these claims also fail as against Detective Kime. An arresting officer "does not violate the Constitution by relying on a facially valid warrant." *Fettes v. Hendershot*, 375 F. App'x 528, 532 (6th Cir. 2010); *see also Voyticky*, 412 F.3d at 677. Detective Kime simply executed the facially valid warrants against the suspect they named; he is

Case No. 1:10-CV-00219
Gwin, J.

therefore entitled to qualified immunity with respect to the arrest.[2/] *See Masters v. Crouch*, 872 F.2d 1248, 1253 (6th Cir. 1989) (holding "police . . . may rely on facially valid arrest warrants even in the face of vehement claims of innocence by reason of mistaken identity or otherwise." (citing *Baker v. McCollan*, 443 U.S. 137, 145 (1979))).

*B. State Law Claims*

Carrasquillo also brings false arrest and false imprisonment claims under Ohio tort law. *See Logsdon v. Hains*, 492 F.3d 334, 347 (6th Cir. 2007) (requiring proof of an intentional unlawful detention to make false imprisonment and false arrest claims (citing *Evans v. Smith*, 646 N.E.2d 217, 225 (Ohio Ct. App. 1994))). "The key to an inquiry into the legality of an arrest and detention is the validity of the arrest warrant." *Garrett v. Fisher Titus Hosp.*, 318 F. Supp. 2d 562, 574 (N.D. Ohio 2004) (citation omitted). Like false arrest and false imprisonment claims under Fourth Amendment standards, "under Ohio law, an arrest warrant, 'issued by a court unless utterly void is a complete defense to an action for false arrest or false imprisonment.'" *Voyticky*, 412 F.3d at 677 (quoting *McFarland v. Shirkey*, 151 N.E.2d 797, 802 (Ohio Ct. App. 1958)); *see also Garrett*, 318 F. Supp. 2d at 574 (A "proper warrant issued by a court is a complete defense to an action for false arrest. A later finding that an otherwise proper arrest was not justified does not render it 'void' from its inception." (quotations omitted)).

Detective Rodriguez procured facially valid warrants from the Cleveland Municipal Court based on her affidavit that fingerprints recovered from the crime scene matched the Plaintiff's name and that Plaintiff Carrasquillo lived next door to the victim. As with his Fourth Amendment claims,

---

[2/] In oral argument to the Court on the motions for summary judgment, the Plaintiff acknowledged that Detective Kime was likely entitled to summary judgment. [Hearing Tr. 7:2–11 ("I'm not going to . . . try to make a strong argument on behalf of keeping Officer Kime in the case. . . . I don't think he would have had an obligation to know it was the wrong person.").]

Case No. 1:10-CV-00219
Gwin, J.

Carrasquillo does not contend that Rodriguez obtained the warrants through any intentional material misrepresentations or omissions, or through other means that would render this legal process or the resulting warrants void. *See, e.g.*, Garrett, 318 F. Supp. 2d at 574; Nerswick v. CSX Transp., Inc., 692 F. Supp. 2d 866, 882 (S.D. Ohio 2010) (finding arrest and detention valid where effected pursuant to court-issued warrant based on affidavit and complaint (citing Norwell v. Cincinnati, 729 N.E.2d 1223, 1237 (Ohio Ct. App. 1999))).

Moreover, Ohio law generally provides statutory immunity from state tort liability to employees of a political subdivision. Such immunity attaches unless (1) the employee's acts were outside the scope of employment or official responsibilities, (2) the employee's acts were with malicious purpose, in bad faith, or in a wanton or reckless manner, or (3) liability is expressly imposed elsewhere under the Ohio Revised Code. O.R.C. § 2744.03(A)(6); *see also* Cook v. City of Cincinnati, 658 N.E.2d 814, 821 (Ohio Ct. App. 1995) (noting presumption of immunity under § 2744.03(A)(6)).

Carrasquillo argues that Detectives Rodriguez and Kime acted "in a wanton or reckless manner by . . . [failing] to take even the most rudimentary steps to verify the identity of the perpetrator." [Doc. 49 at 19-20.] But this argument confuses negligence for wanton misconduct or recklessness. Ohio law defines wanton or reckless misconduct as "the failure to exercise any care whatsoever," or the disregard for a known or likely unnecessary risk of harm. Cook, 658 N.E.2d at 821 (citing Fabrey v. McDonald Village Police Dept., 639 N.E.2d 31, 35 (Ohio 1994)); *see* Johari v. City of Columbus Police Dep't, 186 F. Supp. 2d 821, 832 (S.D. Ohio 2002) (citing Thompson v. McNeill, 559 N.E.2d 705 (Ohio 1990)). Under these definitions, "mere negligence is not converted into wanton [or reckless] misconduct unless the evidence establishes a disposition to perversity on

Case No. 1:10-CV-00219
Gwin, J.

the part of the tortfeasor," or that the officer knows her conduct will, in all likelihood, result in injury. *Fabrey*, 639 N.E.2d at 35 (citations omitted). Carrasquillo presents no evidence that Detective Rodriguez knew or even suspected her investigation likely targeted the wrong person. Indeed, Carrasquillo admits that Rodriguez thought the warrants named the correct person and did not know she could manually verify the fingerprint match. Nor does Carrasquillo offer any evidence that Detective Kime acted in a wanton, reckless, or even negligent manner in effecting the facially valid warrants against the suspect they named.

Accordingly, the Court finds Carrasquillo cannot maintain his state tort claims for false arrest and false imprisonment against Detectives Rodriguez and Kime. The Court grants summary judgment to the Defendants on those state-law claims.

### *C. Municipal Liability*

Finally, the parties move for summary judgment on Plaintiff Carrasquillo's § 1983 claim against the City of Cleveland and Detectives Rodriguez and Kime in their official capacities. Carrasquillo says the city failed to train its investigators to verify a suspect's identity through the forensic unit's manual filing system, instead employing a policy of identity verification through the less-accurate electronic Records Management System. [Doc. 44 at 25-26.] Specifically, Carrasquillo contends that the City of Cleveland's failure to train its officers led to his unconstitutional arrest without probable cause and that the city was deliberately indifferent to such a foreseeable constitutional violation. [*Id.*] The Defendants argue, conversely, that Carrasquillo offers no sufficient evidence to support or otherwise create a genuine issue of material fact as to any of the elements for a failure-to-train claim. [Doc. 46 at 21-24; Doc. 48 at 12-14.]

In making a claim for relief under § 1983 against a municipality, such as the City of

-11-

Case No. 1:10-CV-00219
Gwin, J.

Cleveland, a plaintiff must show that the violation of a federal right occurred as the result of the municipality's illegal policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A municipality may not be held liable under § 1983 simply upon the theory of *respondeat superior*. *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005). Instead, the municipality's policy or custom must have been the moving force behind the alleged violation. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403-04 (1997).

Where a plaintiff asserts a failure-to-train theory of municipal liability, he must show that (1) the training program was inadequate for the tasks that officers must perform, (2) the inadequacy amounts to deliberate indifference to the rights of persons with whom the officers come into contact, and (3) the inadequacy was closely related to or actually caused the injury. *Ciminillo*, 434 F.3d 461, 469 (6th Cir. 2006); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A plaintiff may satisfy the deliberate indifference prong of a failure-to-train claim by proving that the municipality failed to provide adequate training despite the foreseeable consequence that such failure would lead to constitutional violations. *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999).

In this case, irrespective of whether probable cause supported the warrants for Plaintiff Carrasquillo's arrest, Carrasquillo fails to make the required showing to support his § 1983 claim against the city. Importantly, Carrasquillo presents no evidence that any failure to instruct officers on identity verification through the manual filing system created such an "obvious potential for constitutional violations" that the city was deliberately indifferent to the need for additional training. *Plinton v. County of Summit*, 540 F.3d 459, 464-65 (6th Cir. 2008); *see, e.g.*, *City of Canton*, 489 U.S. at 390 (stating that deliberate indifference would be found where, for example, police officers with firearms were given no training on use of deadly force). That Detective Rodriguez's failure to

Case No. 1:10-CV-00219
Gwin, J.

check the manual filing system would lead to a mistaken identity arrest was far from obvious. The uncommon circumstances leading to the Plaintiff's arrest required that: (1) the Plaintiff share a name with the correct suspect; (2) both the Plaintiff and the correct suspect have records in the police system from prior arrests; and (3) the city's electronic records system not display the correct suspect's name, leaving only the Plaintiff's records as a match to fingerprints recovered from the crime scene. A reasonable factfinder could not conclude that the city should be liable under the stringent standard of fault required for deliberate indifference where the possibility of such a mistaken identity—to say nothing of whether the mistake results in a constitutional violation—is so remote.

Thus, although there is some merit to the Plaintiff's argument that an explicit instruction to city officers on manual fingerprint verification would have prevented his arrest, the Plaintiff has not shown that the city was deliberately indifferent to an obvious potential that a failure to so instruct would lead to constitutional violations. *See Kahlich v. City of Grosse Pointe Farms*, 120 F. App'x 580, 585 (6th Cir. 2005) (a plaintiff "must do more than point to something the city could have done to prevent the unfortunate incident." (quoting *City of Canton*, 489 U.S. at 392)). The Court finds that the City of Cleveland is entitled to summary judgment on this claim.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** summary judgment to the Defendants and

Case No. 1:10-CV-00219
Gwin, J.

**DENIES** the Plaintiff's motion for summary judgment.

      **IT IS SO ORDERED.**


Dated: August 30, 2011            *s/    James S. Gwin*
                                                           JAMES S. GWIN
                                                           UNITED STATES DISTRICT JUDGE